<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JEROME LAMAR YOUNG,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>OSCAR AVILEZ, et al.,<br><br>　　　　　　　　Defendants. | Civil Action No. 22-5943 (EP) (MAH)<br><br>**OPINION** |

**PADIN, District Judge.**

Pro se Plaintiff Jerome Lamar Young, a pretrial detainee presently detained in the Hudson County Correctional Center ("HCCC") in Kearny, New Jersey, seeks to file this Complaint against Defendants Oscar Avilez, Director of Medical Michael (last name unknown), and HCCC under 42 U.S.C. § 1983.  D.E. 1.   At this time, the Court must review the Complaint in accordance with 28 U.S.C. § 1915(e)(2) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons below, the Court will allow the complaint to proceed in part.[1]

---

[1] The Court's preliminary review under 28 U.S.C. § 1915 does not determine whether the allegations in the complaint would survive a properly supported motion to dismiss filed by a defendant after service.  *See Richardson v. Cascade Skating Rink*, No. 19-08935, 2020 WL 7383188, at *2 (D.N.J. Dec. 16, 2020) ("[T]his Court recognizes [a] § 1915(e) screening determination is a preliminary and interlocutory holding, subject to revision at any time prior to entry of final judgment." (internal quotation marks omitted)).

## I. BACKGROUND

Plaintiff brings this complaint regarding the conditions of his confinement across seven "claims" about his time in the HCCC.  In the first claim, he alleges that Director Avilez "locked me and other Inmates in [their] cells for 48-60 hours straight without recreation or showers every Friday – Sunday . . . ."  D.E. 1 at 5.  He claims he was personally denied showers and recreations "from June 16, 2022 until the end of July."  *Id.*  The second claim alleges that HCCC does not screen detainees "for wounds or sores upon admission."  *Id.*  The third claim alleges that Plaintiff was locked in a medical unit cell for more than 24 hours without a shower.  *Id.* at 6.  In Claim Four, Plaintiff alleges he had an open Methicillin-resistant Staphylococcus aureus ("MRSA") infection that "[e]very nurse on the first shift failed to clean . . . and bandage it up . . . ."  *Id.*  Plaintiff informed staff that the wound was "highly transmissible," but he did not receive medical attention until officers "compelled the medical personnel to perform their duties."  *Id.*  Claims Five and Six expand on this allegation, alleging that a doctor was deliberately indifferent to the open and obvious wounds on Plaintiff's leg and scrotum.  Finally, Claim Seven alleges that Plaintiff was denied several meal trays.

## II.    STANDARD OF REVIEW

Section 1915(e)(2) requires a court to review complaints prior to service in cases in which a plaintiff is proceeding *in forma pauperis*.  The Court must *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding *in forma pauperis* and is incarcerated.

To survive sua sponte screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMC Shadyside*,

2

578 F.3d 203, 210 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## III.   ANALYSIS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, to state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  The Court will dismiss HCCC as a defendant because a jail is not a "person" within the meaning of § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Crawford v. McMillian*, 660 F. App'x 113, 116 (3d Cir. 2016) ("[T]he prison is not an entity subject to suit under 42 U.S.C. § 1983"); *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989) (correctional facility is not a "person" under § 1983).

Claim One alleges Defendant Avilez deprived Plaintiff of showers and recreation every weekend for a month, and Claim Three alleges Plaintiff was unable to shower or exercise for more

than 24 hours.  "'Under the Fourteenth Amendment, when a pretrial detainee complains about the conditions of his confinement, courts are to consider whether the conditions 'amount to punishment prior to an adjudication of guilt in accordance with law.'" *Tapp v. Proto*, 718 F. Supp. 2d 598, 617 (E.D. Pa.) (quoting *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005)), *aff'd*, 404 F. App'x 563 (3d Cir. 2010).  "[I]n determining in the present case whether conditions at the Jail are such as to amount to punishment, which would violate the due process rights of pre-trial detainees, we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes." *Union Cnty. Jail Inmates v. Di Buono*, 713 F.2d 984, 992 (3d Cir. 1983).  The Court must then "inquire as to whether these conditions cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." *Tapp*, 718 F. Supp. 2d at 617 (citing *Hubbard*, 399 F.3d at 159).

Prison officials have a duty "to provide 'humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  "[R]easonable access to safe bathing . . . . constitute[s] a component of civilized living . . . ." *Partelow v. Massachusetts*, 442 F. Supp. 2d 41, 50 (D. Mass. 2006).  "Lack of exercise may amount to a constitutional violation where it poses a significant threat to an inmate's physical and mental well-being.  For example, lack of exercise may constitute cruel and unusual punishment where 'movement is denied and muscles are allowed to atrophy.'" *Platt v. Brockenborough*, 476 F. Supp. 2d 467, 471–72 (E.D. Pa. 2007) (quoting *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)).  Here, the complaint alleges that Plaintiff was unable to shower or exercise on the weekends in June 2022 and for about 24 hours in September.  Presumably, he was permitted to shower and exercise at all other times.  There are no

4

facts in the complaint from which the Court could reasonably infer that Plaintiff was deprived of showers or exercise to such an extent that there was a significant threat to Plaintiff's well-being. *See, e.g., Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) (affirming dismissal of claim where plaintiff did "not allege that he suffered any harm as a result of the denial of additional showers and exercise"). The Court will dismiss Claims One and Three without prejudice and will dismiss Oscar Avilez as a defendant.

Claims Two, Four, Five, and Six relate to Plaintiff's medical care for MRSA and related policies. Plaintiff alleges in Claim Four that he was denied adequate medical treatment. Claim Two alleges that the HCCC's medical department does not adequately screen for wounds or sores during admission, and Claim Five alleges Medical Director Michael, whose last name is unknown, failed to train medical staff "in accordance with the law that govern[s] all institutions in New Jersey, or their policies/customs are in conflict with that law and regulations of Hudson County Jail." D.E. 1 at 6.

Claims by pretrial detainees for failing to provide adequate medical care arise under the Fourteenth Amendment Due Process Clause and are analyzed "under the standard used to evaluate similar claims brought under the Eighth Amendment[.]" *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The Court will therefore review Plaintiff's claim under the same standard used to evaluate similar claims brought under the Eighth Amendment. *Moore v. Luffey*, 767 F. App'x 335, 340 (3d Cir. 2019).[2] To state an Eighth Amendment Claim, a plaintiff must allege facts indicating that defendants were deliberately indifferent to his or her serious medical

---

[2] The Supreme Court has applied an "objectively unreasonable" standard to analyze an excessive force claim under the Fourteenth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015). However, the Third Circuit has declined to address whether the "objectively unreasonable" standard applies to a deliberate indifference to medical need analysis. *Moore*, 767 F. App'x at 340 n.2.

need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To accomplish this, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (alteration in original)).

In Claim Four, Plaintiff alleges that the medical staff "failed to clean [his] wound and bandage it up and it was exposed from approximately 1:15 pm – 4:40 pm and it was Staph Infection (MRSA)." D.E. 1 at 6.  "I told them it's a Biohazard and others were being place[d] at risk by this Conduct, because it's highly transmissible." *Id.*  He elaborates in Claims Five and Six that he saw Doctor Ibrahim on September 9, 2022, who said it was "jock itch" and gave Plaintiff antifungal cream "although [Plaintiff] had leaking balls . . . ." D.E. 1-2 at 1.  Plaintiff asked for antibiotics for MRSA, but Doctor Ibrahim sent Plaintiff "back to the unit without bandages or antibiotic ointment . . . ." *Id.*  Plaintiff saw an LPN on September 13, 2022 and showed her the boil on his scrotum.  *Id.* at 2.  He then saw Dr. Smichik, who "identified the objective symptoms as MRSA/Staph and" ordered swabs of Plaintiff's nose and boils.  *Id.*  Dr. Smichik told Plaintiff that if he did not "want to go to quarantine to keep quiet about the matter" until the results from Plaintiff's labs returned, but Plaintiff was sent to quarantine by LPN Phadillah.  *Id.* at 6.  The test for the boil on Plaintiff's scrotum returned positive for MRSA.  *Id.* at 2.

"MRSA is a serious medical need because 'a lay person would easily recognize the necessity for a doctor's attention.'" *Warren v. Prime Care Med. Inc.*, 431 F. Supp. 3d 565, 578 n.64 (E.D. Pa. 2019) (quoting *Mattern v. City of Sea Isle*, 657 F. App'x 134, 139 (3d Cir. 2016)). "To act with deliberate indifference is to 'recklessly disregard a substantial risk of harm.'" *Id.* at 578 (quoting *Baker v. Younkin*, 529 F. App'x 114, 115 (3d Cir. 2013)).  The Third Circuit has

found deliberate indifference "'where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (quoting *Rouse*, 182 F.3d at 197). Accepting the facts alleged in the complaint as true, as the Court must at this stage, and given the symptoms communicated by Plaintiff at the time, it is plausible that Dr. Ibrahim was deliberately indifferent to Plaintiff's injury.

"[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). However, Dr. Ibrahim's dismissal of a "leaking" boil on a person's scrotum as a fungal infection is plausibly a "treatment decision regarding the symptoms of which [he] had awareness [that] was 'a substantial departure from accepted professional judgment, practice, or standards' such that a reasonable jury could conclude that" Dr. Ibrahim "'actually did not base [his] decision on such judgment.'" *Gaines v. Busnardo*, 735 F. App'x 799, 803 (3d Cir. 2018) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)). *See also Farmer v. Brennan*, 511 U.S. 825, 843 n.8 (1994) (noting prison official "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist".). Giving Plaintiff the benefit of all reasonable inferences, he has stated a deliberate indifference claim against Dr. Ibrahim. The Court will permit Claims Four, Five, and Six to proceed against Dr. Ibrahim.

Claims Two and Five also address Medical Director Michael's liability as a supervisor. However, Plaintiff states that "Medical Director Michael do[es] not have control or authority over

the Well Path medical personnel and the policies . . . ."  D.E. 1-2 at 4.  The Medical Director cannot

be liable as a policymaker if he does not have final policymaking authority.  *See Oaks v. City of*

*Philadelphia*, 59 F. App'x 502, 504 (3d Cir. 2003) (plaintiff had not "present[ed] any evidence

showing that a City official with 'final policy making authority' authorized or acquiesced in a

policy or custom in violation").  The Court will dismiss Claim Two in its entirety and Claim Five

to the extent it raises claims against Medical Director Michael.

Finally, Plaintiff alleges in Claim Seven that he did not receive several meal trays.  D.E. 1-2 at 2-3.  He alleges that he is on a special diet tray and did not receive a breakfast tray on September 17, 2022 and dinner trays between August 24, 2022 and September 3, 2022.  *Id.* Plaintiff further states that he did not receive lunch trays on "numerous occasions" but was given "extra dinner" to make up for it.  *Id.* at 3.  The Court will dismiss this claim without prejudice. Plaintiff does not sufficiently allege who allegedly denied him the meals, listing only the officers who attempted to help him.  "Medical Unit Officer Maldonado" is written after the allegation that Plaintiff did not receive one breakfast tray, but there is nothing explaining who that is or connecting the medical officer to the denial of dinners.

IV.    CONCLUSION

For the reasons stated above, the Court will dismiss Claims One, Two, Three, and Seven without prejudice for failure to state a claim.  Claims Four, Five, and Six will be permitted to proceed against Dr. Ibrahim.

An accompanying Order will be entered.

Dated**: January 17, 2023**

Evelyn Padin, U.S.D.J.